## Richmond

### B. CALVIN BURNS

### V.

### EBY & WALKER, INC., ET. AL.

October 14, 1983.

Record No. 810475.

Present: All the Justices.

*Richard R. Nageotte (Nageotte, Borinsky & Zelnick,* on brief), for appellant.
*James S. G. Turner (Turner & Brice,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Eby & Walker, Inc., and Countryside Realty, Inc. (the Realtors), proceeded by warrant in debt in the general district court against B. Calvin Burns for deferred real estate commissions alleged to be payable under a sales contract dated January 11, 1978. Upon removal of the action to the circuit court, a jury trial ensued. After all the evidence had been introduced, the court discharged the jury and ruled that the Realtors were entitled to judgment for commissions on interest Burns received with the first installment payment of principal on a deferred purchase money obligation. Accordingly, by order entered December 24, 1980, the court awarded the Realtors judgment against Burns in the amount of $1,885.04, with 8% interest from November 8, 1979. On appeal, Burns argues that the court erred in discharging the jury and construing the sales contract as a matter of law and in construing the contract to require Burns to pay real estate commis-

sions on interest he received on payments of deferred purchase money.

The Realtors were parties to the sales contract dated January 11, 1978, providing for Burns to sell a tract of land to Weston Enterprises, Ltd. It was stipulated that Weston Enterprises, Ltd., assigned its interest in the contract to Stafford Knolls Development, Ltd., that the assignment did not affect the provisions for real estate commissions, and that the Realtors acted as real estate brokers in the sale. It is also undisputed that the sale was consummated on September 5, 1978.

Paragraph 2 of the contract provided for payment of $167,000, a portion of the purchase money, on the date of settlement and execution of a note for the balance payable in five annual installments, with 9% interest per annum, payable annually, and secured by a first deed of trust on the premises. Paragraph 4 of the contract provided for a $25,000 discount to the purchaser upon payment of the purchase price within 30 days after the settlement date.

According to the statement of facts signed by the trial judge pursuant to Rule 5:9(c), Burns received the first deferred payment of $58,366.85, of which $37,516.65 represented principal and $20,850.20 interest and penalty. On November 5, 1979, he sent a check to each of the Realtors in the amount of $1,875.82, being 5% of the principal payment. The Realtors demanded in addition 5% commission each on the interest Burns received; when Burns rejected their demands, they initiated this action.

The statement of facts summarized the proceedings in the trial court as follows:

> After hearing all of the evidence for both Plaintiffs and Defendant, counsel for Plaintiffs moved that the Court discharge the jury because no significant facts were in dispute, and that the Court decide the case as a matter of law by interpreting the meaning of the contract; Counsel for Defendant agreed that no significant facts were in dispute; whereupon the Court discharged the jury and decided the case by interpreting the contract as a matter of law. As a result thereof the court entered judgment in favor of the Plaintiffs, all as is set out in the Final Order of this Court entered on the 24th day of December, 1980.

In further explication of the trial court's ruling, the statement of facts recited that the court interpreted paragraph 13 of the contract as a matter of law to mean that the Realtors were entitled to receive from Burns 10% of all sums he received "as proceeds of the deferred purchase money Deed of Trust Note . . . whether such sums be in payment of principal or interest or penalty or any combination thereof."* Paragraph 13 of the contract, in which the Realtors were referred to collectively as "Realtor," provided as follows:

> Seller and Buyer acknowledge Realtor as having brought the parties together and is thereby due a commission of TEN PERCENT (10%) from Seller, payable by Seller in the event of settlement hereunder. The amount of this commission shall be equal to 10% of the proceeds hereunder, actually received by Seller. The said commission is not payable on any deferred obligation received by Seller, unless and until such obligation is paid.

We take the record as it comes to us authenticated by the trial judge. *Dere v. Montgomery Ward,* 224 Va. 277, 281 n.2, 295 S.E.2d 794, 796 n.2 (1982). The statement of facts, as corrected by the trial judge, shows that on motion of counsel for the Realtors, the trial court discharged the jury only after counsel for Burns agreed that no significant facts were in dispute. Thus, the record shows more than mere failure of Burns to make contemporaneous objection to the discharge of the jury; it shows his affirmative agreement that there were no significant facts in dispute. On the record before us, therefore, Burns will not be heard now to complain that the court erred in discharging the jury. Rule 5:21.

Burns contends that the trial court erred in its construction of the contract. We disagree.

Where a contract is clear and unambiguous on its face, it is the court's duty to construe it. *Nelson and Co. v. Development Corp.,* 207 Va. 386, 389, 150 S.E.2d 142, 145 (1966); *Geoghegan v. Arbuckle Bros.,* 139 Va. 92, 100, 123 S.E. 387, 389 (1924). If the contract is not clear and unambiguous on its face but extraneous evidence makes it so, the court also has the duty to construe

---

* The Realtors did not seek 10% commissions on the penalty received by Burns as a part of the first installment payment. Judgment, therefore, was awarded them for 10% commissions on only the interest Burns received.

it. *Main-Atlantic v. duPont & Co.,* 213 Va. 180, 184, 191 S.E.2d 211, 215 (1972). In the present case, extraneous testimony was presented before the trial court ruled. We are of opinion, however, and so hold that the contract is clear and unambiguous on its face and that no extraneous evidence was needed to construe it to mean precisely what the trial court ruled it meant.

Under the second sentence of paragraph 13, the amount of the Realtors' commission is set at 10% "of the proceeds hereunder, actually received" by Burns. The third sentence provides that no commission is payable on deferred obligations until they are paid. Taken in conjunction with paragraph 4, therefore, paragraph 13 protected Burns from paying any commission on the $25,000 discount if the balance of the purchase price were paid in full within 30 days after settlement. By its third sentence, paragraph 13 protects Burns from paying any commission on any portion of the deferred purchase money note that is not paid. The contract requires the Realtors to collect from Burns their deferred commissions only as he collects his deferred purchase money from the annual installments paid on the obligation. The obligation is the installment note with interest and late-payment penalty.

The word "proceeds" has a broader meaning than "principal." One synonym is "receipts." Black's Law Dictionary 1084 (rev. 5th ed. 1979). Another definition is "money or articles or other thing of value arising or obtained by the sale of property." *Id.* Here again, the article of value is the installment note, carrying interest and penalty. In effect, the Realtors are engaged in a joint venture with Burns. When Burns collects payments, the Realtors are entitled to collect from him 10% on account of their commission. They assumed the same risk of slow payment or non-payment that Burns assumed. The contract clearly intended that the Realtors be compensated for the purchaser's use of their money just as Burns is being compensated for the use of his. It did not intend that Burns be compensated for the purchaser's use of the Realtors' money.

Accordingly, we hold that the trial court did not err in its construction of the contract, and we will affirm the final judgment.

*Affirmed.*